## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

|  |  |  |
|---|---|---|
| **NATIONAL CASUALTY COMPANY,** | ) ) ) | **CASE NO.: 16-cv-02145-CSB-EIL** |
| **Plaintiff,** | ) ) | |
| v. | ) ) | |
| **NATIONAL ASSOCIATION OF INTERCOLLEGIATE ATHLETICS, et al.,** | ) ) ) | |
| **Defendants.** | ) ) | |

### DEFENDANT NATIONAL ASSOCIATION OF INTERCOLLEGIATE ATHLETICS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

In its order dated July 26, 2016 (Doc. 9), the Court authorized a 45-day discovery period for the limited purpose of allowing plaintiff National Casualty Company ("NCC") to develop facts to oppose defendant National Association of Intercollegiate Athletics' ("NAIA") motion to dismiss or transfer (Doc. 3). It is now day 89, and NCC is seeking to compel, among other things, *30 years*' worth of NAIA's business transactions and litigation history *in all 50 states;* irrelevant, privileged, and confidential attorney-communications and work product *relating only to the defense of the underlying liability case*; and *final exhibit and witness lists* in this case— which does not yet have an answer, scheduling order, or trial date. Such broad and sweeping discovery cannot be what the Court contemplated when it authorized limited jurisdictional discovery focused on NAIA's pending motion to dismiss or transfer, and it is not necessary to enable NCC to respond to the pending motion.

NAIA asks this Court to put a stop to NCC's over-reaching discovery tactics, deny the Motion to Compel, and direct NCC to promptly respond to NAIA's pending motion to dismiss or transfer.

1

I. **Background Regarding this Dispute**

NAIA is an organization headquartered in Kansas City, Missouri. NAIA has been sued by a former college football player in a concussion lawsuit in Illinois state court. NCC is defending that case under a reservation of rights (along with several other insurance carriers.) NCC subsequently filed this declaratory judgment action regarding its obligations to NAIA under the insurance policy applicable to the underlying concussion lawsuit.

The Court has already ruled *as a matter of law* that NAIA *is not subject to general jurisdiction* in Illinois. Doc. 9, pp. 3-5. The Court ruled that "even the facts NCC hopes to develop with further discovery would not establish general jurisdiction," making "(1) the length of time each Illinois school was a member of the NAIA; (2) other championships and events the NAIA has held in Illinois, and (3) other business conducted by the NAIA in Illinois" irrelevant. *See id.*

The question for which the Court authorized limited discovery is whether the NAIA's contacts with the State of Illinois *related to this coverage dispute* are sufficient to give rise to "specific" jurisdiction. The Court granted NCC leave to conduct "limited" discovery that was to focus on specific jurisdiction and NAIA's alternative request for change of venue, in particular, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at p. 6. The Court zeroed in on the "gap" in NCC's analysis: "the location of the contract negotiations and formation." *Id.*

Rather than crafting limited discovery on these discrete issues, NCC propounded 25 Requests for Production of Documents of Documents and 25 Interrogatories - the full complement of interrogatories allowed in the entire case. *See* Fed. R. Civ. P. 33 ("a party may serve on any other party no more than 25 written interrogatories, including all discrete

2

subparts"). NCC prefaced its requests with roughly three pages of single-spaced "definitions" and "instructions." NCC's requests contemplated that NCC intended to review and designate for copying responsive documents, which of course is the default means of responding to document requests under Fed. R. Civ. P. 34(a)(1).[1]

NAIA timely responded to NCC's discovery on September 6, 2016. When NCC notified NAIA late in the day on September 8, 2016, that it wanted a phone conference to discuss the discovery responses, NAIA promptly responded and spoke with NCC the next morning, on September 9. During that call, NAIA agreed to provide supplemental responses and to make an electronic production of documents, all of which it did that day. This was the last day of the 45-day period the Court initially authorized for jurisdictional discovery. Later that day, NCC filed a motion to extend jurisdictional discovery for 30 days (Doc. 10).[2]

After September 9, in its continuing effort to resolve or narrow these discovery disputes, NAIA provided two more rounds of supplemental discovery responses. The first round, served on September 15, provided NCC clarification that NAIA neither rents nor owns offices or property outside of Missouri (NCC was troubled that the previous answer did not specify whether the NAIA *rented* property outside of Missouri) (IROG No. 5); the average weekly number of oral and written communications between NAIA and any counsel for the Underlying Suit who resides in Illinois (none) (IROG No. 21); and a privilege log. The second round, served on September 28, provided NCC information regarding all travel to Illinois made by NAIA's agents, employees, and counsel in connection with the Underlying Lawsuit (IROG No. 20); the

---

1 For example, NCC specifically "instructed" NAIA that for "any documents that are stored or maintained in files in the normal course of business, such documents shall be produced in such files, or in such a manner so as to preserve and identify the file from which such documents were taken." See NCC RFPD, p. 3, Instr. 5.
2 Contrary to Local Rule 6.1, NCC never raised the issue of an extension with the NAIA, despite speaking with NAIA's counsel that morning regarding discovery.

3

location of defense counsel's "file" (IROG No. 22); a list of all attorneys who have performed legal services for NAIA in connection with defense of the Underlying Lawsuit (RFPD No. 9); and a list of all attorneys who have entered their appearances in the Underlying Lawsuit (RFPD No. 9). [3]

Nevertheless, despite NAIA providing all discovery reasonably within the scope of the Court's order - as well as some discovery clearly beyond the scope of the Court's order or already known to NCC - NCC filed this Motion to Compel.

## II.     As the Court Already has Ruled, Jurisdictional Discovery Is *Limited*

Courts must "take care to ensure that litigation of the jurisdictional issue does not undermine the purposes of personal jurisdiction law in the first place." *Ellis v. Fortune Seas, Ltd.*, 175 F.R.D. 308, 312 (S.D. Ind. 1997). After all, broad and unconstrained jurisdictional discovery "impinge[s] the very right the jurisdictional basis requirements are designed to protect: the right not to have to litigate that case in that forum." *See* S.I. Strong, *Jurisdictional Discovery in United States Federal Courts*, 67 Wash. & Lee L. Rev. 489, 524 n.162 (2010). Moreover, "[i]n cases based on alleged contracts between the parties, it would be an unusual case" where the plaintiff needs extensive discovery "to show specific jurisdiction linking the defendant and the controversy to the forum." *Ellis*, 175 F.R.D. at 312.

Apparently undeterred by the Court's order authorizing *limited* jurisdictional discovery only, NCC nevertheless insists that it is entitled to "broad and liberal" discovery. Doc. 12 at 4. (citing *Bd. of Tr. of the Univ. of Ill. v. Micron Tech., Inc.*, No. 11-cv-02288-SLD-JEH, 2016 U.S. Dist. LEXIS 102013, at *6 (C.D. Ill. Aug. 3, 2016)). That case, as one might suspect, did not involve limited or jurisdictional discovery at all; rather, it was in the context of standard federal

---

[3] Most or all of this information was already readily accessible to NCC, from either the billing records submitted to NCC in the Underlying lawsuit, the state court's docket, or through NCC's frequent communications with defense counsel in the Underlying Lawsuit.

court discovery parameters. Rule 26(b) expressly states that this general principle is subject to limitation by an order of the Court. *See* Fed. R. Civ. P. 26(b)(1) ("[u]nless otherwise limited by court order, the scope of discovery is as follows . . .") and 26(b)(2)(c).

The Court has already done so here, and for good reason. It should now rule that NCC's "broad and liberal" discovery requests fall well outside its order and the issues relevant to its specific jurisdiction inquiry.

### III. As a Matter of Law, NAIA's Illinois Contacts Related to the Underlying Suit Cannot Support Specific Jurisdiction Over This Coverage Action

The primary issue underlying the dispute about the proper scope of NCC's discovery requests is a legal one: does the existence of an underlying tort claim in a forum state confer that same state's courts specific jurisdiction over a related coverage action?

A fundamental premise of NAIA's motion to dismiss is that "the 'transaction or occurrence' underlying a declaratory judgment action is not the underlying tort suit, but the formation of an insurance contract and the insurer's decision to deny coverage." Doc. 3, p. 6 (collecting cases).[4] Accordingly, the proper jurisdictional test is the one set forth for contract actions in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985). *See id.*, pp. 8-10; *see also* Doc, 9, pp. 5-6 (stating that the Court must consider the situs of the parties' prior negotiations, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing). This test is applied to the specific contracts (here, the insurance policies) that give rise to the rights and liabilities at issue in a declaratory judgment action—not to the forum contacts giving rise to the underlying suit. Doc. 9, p. 7.

---

4 *See also Lancer Ins. Co. v. Landers Explosives, Inc.*, No. 3:07-CV-117-RLY-WGH, 2008 WL 3819850, at *6 (S.D. Ind. July 24, 2008) ("Simply because, in a separate action, Cemex now seeks to recover damages from Landers, which may or may not be covered by Landers' insurance policy issued by Plaintiff, does not give this court specific jurisdiction over Cemex. The present case does not arise out of any alleged injury Cemex has caused Plaintiff as a result of Cemex's activities in Indiana. As such, this court does not have specific jurisdiction over Cemex.")

5

NAIA has answered all discovery pertinent to these factors. This discovery dispute essentially turns on whether any discovery beyond that is necessary or appropriate in order to allow NCC to file its opposition to NAIA's pending motion. NCC would have it that the mere fact that NAIA has been sued in Illinois in another lawsuit – a fact not in dispute or in need of any discovery - renders it subject to jurisdiction in this lawsuit. That is not the law, however, and reveals the weakness of NCC's argument that NAIA should be required to respond to the remaining discovery.

## IV. NCC's "Due Process" Discovery is Really a Specious and Unnecessary Tactic to Massively Expand the Scope of Discovery

NCC requests that the Court compel NAIA to answer what it calls "due process discovery." Doc. 12, p. 5-7. NCC justifies all of these requests under the theory that they might bear remotely on the notion of "fairness." In reality, this is a pretext to try to get a second bite at establishing general jurisdiction, which the Court has roundly rejected. The Court has already told the parties what matters: the specific jurisdiction analysis, which focuses on the insurance contract itself, and the venue factors, which are based upon the parties' present situation - not whether, e.g., NAIA registered to do business in California in 1986.

### A. NCC's "Due Process Discovery" Seeks Facts Pertinent to General Jurisdiction Only

The first category of these requests are simply general jurisdiction requests under a different name. NCC asks the Court to compel NAIA to produce all contracts with Illinois entities (RFPD No. 14), all marketing and advertising materials sent in Illinois (RFPD No. 16), and all events or programs hosted in Illinois (IROG No. 2). As this Court already recognized, "[t]he declaratory judgment action before this Court relates only to whether NCC has a duty to defend and indemnify NAIA under the terms of their insurance contract." Doc. 9, p. 12. None

of the requested material relates to the negotiation, formation, or coverage decision under the insurance policies at issue in this case. These facts therefore cannot support a claim for specific jurisdiction.

### B. The "Due Process" Requests Seek *Nationwide Discovery* Regarding Conduct Wholly Unrelated to the State of Illinois

Next, NCC insists that NAIA must answer discovery requests about contacts that—not only are unrelated to the insurance policies at issue—but are *wholly unrelated to the state of Illinois*. NCC requests NAIA's entire litigation history, and identify every state in which it is registered to transact business. NCC asserts that this discovery is relevant to "determining whether it would be unfair for NAIA to have to litigate outside of its home state." Doc. 12, p. 7. This theory misapprehends the law governing specific jurisdiction.

Specific jurisdiction depends on "the contacts the defendant has with the *forum*." *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1024 (7th Cir. 2009) (citations omitted). It does not depend on the aggregation of contacts a defendant has with the 49 other states that are not its "home state." NCC cites no authority for this proposition, and none exists. NAIA has answered these requests as they pertain to Illinois, the forum state at issue. No other discovery is necessary or appropriate.

### C. The "Sufficient Contacts" Analysis Answers the Due Process and Fairness Question—It Is Not A Separate Inquiry Justifying Unlimited Discovery

NCC seeks to justify discovery on all of NAIA's business and litigation history in all 50 states because such information might remotely implicate "whether it would be unfair for the NAIA to have to litigate outside of its home state." Doc. 12, p. 7. But fairness factors are irrelevant absent sufficient minimum contacts. *See Growden v. Ed Bowlin & Associates, Inc.*, 733 F.2d 1149, 1151 (5th Cir. 1984) ("the relative conveniences and inconveniences to the

7

parties cannot substitute for the requirement of some necessary minimum contacts"). Moreover, the minimum contacts inquiry *is the due process analysis*. *See Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998), as amended (Oct. 13, 1998) ("To satisfy due process, specific jurisdiction requires that the suit 'arise out of' or 'be related to' these minimum contacts with the forum state."). It is not a separate inquiry that justifies unlimited discovery on any issue plausibly related to "fairness."

## V. NCC's Request for the NAIA's Final Witness and Exhibit Lists Are Premature

This request, as much as any other, highlights the failure of NCC to hew to the Court's directive of "limited" discovery.

NAIA has provided NCC the name and locations of the employees involved in procuring the NCC insurance policies, the name and location of the broker, and the location of NAIA's headquarters (all in Kansas City, Missouri). This gives NCC a pretty good idea of where the relevant NAIA documents and witnesses are located, and is sufficient to allow NCC to formulate its opposition to NAIA's jurisdictional and venue motion.

NCC persists, however, and seeks to compel NAIA to identify specifically "each document [NAIA] intends to use at trial," and "each witness, including any expert witness, [NAIA] intends to disclose in this Lawsuit" (IROG Nos. 23-24). The parties have not yet even exchanged Rule 26 disclosures in this case. Nor has an Answer been filed. The discovery NAIA has provided is sufficient for purposes of the jurisdictional motion.

## VI. Defense Counsel's Communications Regarding the Underlying Lawsuit Are Irrelevant, Confidential and Privileged.

NCC's position on defense counsel's communications is unclear. The actual Requests for Production (Nos. 7 and 15) seek documents from defense counsel's file for the Underlying

Lawsuit pertaining to "why the NAIA acquiesced to the court's jurisdiction in the Underlying Lawsuit" and "concussion protocols issued by NAIA to its member schools." *See* Doc. 12, p. 8. At times however, NCC has characterized this dispute as one involving all documents in defense counsel's file. *See* Doc. 12-1, p. 3 (stating that NCC expects "this entire category of documents, *including those responsive* to Requests for Production #7 and 15, will be produced immediately"). This response addresses only the requests actually propounded, not the subsequent expansion of scope seen in the correspondence.

### A. The Requested Material is Irrelevant to the Question of Specific Jurisdiction Over this Coverage Action

The reasons that NAIA chose not to contest personal jurisdiction in the Underlying Lawsuit are irrelevant to whether NAIA is subject to personal jurisdiction in this separate coverage action. A party's submission to jurisdiction in one lawsuit does not waive its right to contest jurisdiction in a related suit. *Colletti v. Crudele*, 1075, 523 N.E.2d 1222, 1226-76 (Ill. App. Ct. 1988) ("[the defendant] is within its rights in appearing specially in one lawsuit despite having appeared generally in other separate suits involving the same subject matter . . . . and plaintiffs cite no authority for transmuting that appearance into a general one simply because [the defendant] has appeared generally elsewhere in a similar case."). This is especially true in this case because the Underlying Lawsuit arises out of the alleged commission of a tort in the state of Illinois, which gives rise to a decidedly different jurisdictional analysis. *Lancer Ins. Co. v. Landers Explosives, Inc.*, No. 3:07-CV-117-RLY-WGH, 2008 WL 3819850, at *5 (S.D. Ind. July 24, 2008) (distinguishing between the specific jurisdiction analysis for tort and contract disputes).

NCC's theory of relevance for "concussion protocols" is also unavailing. Regardless of whether such documents might be relevant to the Underlying Lawsuit, such documents disclose

9

nothing about the location of the negotiations, contemplated consequences, formation, or other issues relevant to the insurance policies that give rise to this lawsuit.

### B. NAIA Can Properly Withhold Defense Counsel's Communications and Work Product under Federal and Missouri Law

Contrary to NCC's claim, Illinois privilege law does not govern this dispute. As Illinois federal courts have held, "[o]nce the court has . . . determined the substantive law applicable to a claim based on state law, the privilege issues are determined by that same state's law." *See United States Sur. Co. v. Stevens Family Ltd. P'ship*, No. 11 C 7480, 2014 WL 902893, at *2 (N.D. Ill. Mar. 7, 2014).

NCC cannot credibly argue that Illinois' substantive law governs the policies at issue. The policies were issued to a Missouri corporation by an Arizona corporation, they insured persons and property located in Missouri, and are replete with Missouri-specific policy endorsements. The substantial body of law governing the relationship between a Missouri insured and its insurer as embodied in Missouri statutes, regulations, and case law is not subject to disregard based upon the happenstance of where a covered claim might arise.

Because Missouri substantive law governs this coverage dispute, Missouri privilege law also applies. *Id.* Moreover, the *Waste Management* decision that NCC relies upon has been universally rejected by other jurisdictions.[5] Even if the Court decides this case under the rubric of *Allianz Ins. Co. v. Guidant Corp*, 869 N.E.2d 1042 (Ill. Ct. App. 2007), those factors establish good reason to apply Missouri privilege law.

---

[5] *See, e.g.*, *Bituminous Cas. Corp. v. Tonka Corp.*, 140 F.R.D. 381, 386–87 (D. Minn. 1992) (describing the decision as "fundamentally unsound"); *North River Ins. Co. v. Philadelphia Reins. Corp.*, 797 F. Supp. 363 (D.N.J. 1992); *Owens-Corning Fiberglass Corp. v. Allstate Ins. Co.*, 660 N.E.2d 765 (Ohio 1993); *Eastern Air Lines v. U.S. Aviation Underwriters*, 716 So. 2d 340 (Fla. App. 1998); *In re Imperial Corp. of Am.*, 167 F.R.D. 447 (S.D. Cal. 1995); *Northwood Nursing & Convalescent Home v. Continental Ins.*, 161 F.R.D. 293 (E.D. Pa. 1995); *Remington Arms v. Liberty Mut. Ins.*, 142 F.R.D. 408 (D. Del. 1992).

10

The communications at issue are between a Missouri client and Missouri counsel defending the underlying tort claim. These communications are irrelevant and immaterial to the specific jurisdiction question at issue, particularly where this Court has not yet determined that it has jurisdiction over this dispute. It would be grossly unfair to require NAIA to disclose communications that are privileged in every other jurisdiction simply because this case was filed in Illinois—especially when it is undecided whether this case belongs in Illinois at all. These considerations, along with the immateriality of the evidence sought, render Illinois privilege law inapplicable to this dispute.

In addition to objections based on the attorney-client privilege, NAIA also lodged work product objections to these requests. "Federal law governs questions of work product privilege," and therefore "the *Waste Management* decision does not apply." *Beloit Liquidating Trust v. Century Indem. Co.*, No. 02 C 50037, 2003 WL 355743, at *10 (N.D. Ill. Feb. 13, 2003). Defense counsel's analysis of jurisdictional issues are protected by federal work product privilege, and NCC must establish both "substantial need" for these materials and "undue hardship" in obtaining the information by other means. Fed. R. Civ. P. 26. NCC's insistence that such information might remotely bear on "fairness" is insufficient to establish "substantial need."[6]

---

[6] One final point is worth noting. Despite NCC's insistence that it needs these documents and that the duty to cooperate and joint interest doctrine require NAIA to produce them, NCC has never asked NAIA's counsel in the Underlying Lawsuit for any of this material, despite frequent communications with him. See Doc. 12-4, p. 3. Yet, it asks for them in this lawsuit in which the plaintiffs in the underlying suit are also parties; in other words, NCC is asking that the files of the attorneys defending the underlying concussion suit be disclosed, in this matter, to the attorneys for the plaintiffs prosecuting that suit. The request itself raises substantial questions about the consequences of such a disclosure to NAIA's defense in the underlying concussion case, and, if produced, the resulting responsibility to be borne by NCC for making such an unprecedented and compromising demand on its own insured.

KCP-4752296-2

### VII. NAIA's Time-Frame Objections Are Appropriate In Light of the Governing Jurisdictional Standard

Consistent with the overreaching nature of its requests generally, NCC insists that the relevant discovery period should encompass a **30-year time frame** spanning from 1986 to the present. Notably, NCC does not identify a single discovery request that it believes was improperly limited due to NAIA's time frame objection. And NAIA has not withheld any information *solely* on the basis of a time frame objection. Instead, all of this information is simply irrelevant to the question before the Court. Documents from decades before the NAIA-NCC relationship even began disclose nothing about the negotiations, expectations, performance of the insurance policies, or about the parties' actual course of dealings.

NAIA has produced material immediately preceding and during the time period covering the negotiation, procurement, and coverage periods of the NCC policies (approximately 2007-present). This is a reasonable time period for "limited discovery", and is more than sufficient to allow NCC to oppose NAIA's motion under the governing specific jurisdiction and venue standards.

## CONCLUSION

NCC has had more than sufficient opportunity to develop its opposition to the NAIA's motion to dismiss. NAIA respectfully requests that the Court overrule NCC's Motion to Compel (Doc. 12) in its entirety.

DATED: October 14, 2016

Respectfully Submitted,

/s/ Kirsten A. Byrd
Kirsten A. Byrd
Husch Blackwell LLP
4801 Main Street, Suite 1000
Kansas City, Missouri  64112
(816) 983-8000
(816) 983-8080 (FAX)
kirsten.byrd@huschblackwell.com
***Attorney for Defendant National Association
of Intercollegiate Athletics***

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2016 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record who are registered with the Court's CM/EFC system.

| | |
|---|---|
| **Jonathan L Schwartz**<br>GOLDBERG SEGALLA LLP<br>Suite 2450<br>311 South Wacker Drive<br>Chicago, IL 60606<br>312-572-8411<br>Fax: 312-572-8401<br>Email: jschwartz@goldbergsegalla.com | **David Baluk**<br>SHRADER & ASSOCIATES LLP<br>Ste 390<br>3900 Essex Lane<br>Houston, TX 77027<br>713-782-0000<br>Fax: 713-571-9605<br>Email: david@shraderlaw.com |
| **Colin B Willmott**<br>GOLDBERG SEGALLA LLP<br>Suite 2450 | **James Spiros**<br>SPIROS LAW PC<br>Suite 3 |

| | |
|---|---|
| 311 South Wacker Drive<br>Chicago, IL 60606<br>312-572-8414<br>Fax: 312-572-8401<br>Email:<br>cwillmott@goldbergsegalla.com<br><br>***Attorneys for Plaintiff National Casualty Company*** | 2807 North Vermilion<br>Danville, IL 61832<br>217-443-4343<br>Fax: 217-443-4545<br>Email: jspiros@spiroslaw.com<br><br>**Justin H Shrader**<br>SHRADER & ASSOCIATES LLP<br>22A Ginger Creek Parkway<br>Glen Carbon, IL 52034<br>618-659-0001<br>Fax: 713-571-9605<br>Email: justin@shraderlaw.com<br><br><br>s/Kirsten A. Byrd |